J-S47038-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: A.L.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.S., FATHER | : | No. 613 MDA 2019 |

Appeal from the Decree Entered March 20, 2019
in the Court of Common Pleas of York County
Orphans' Court at No(s): 2018-0192(a)

| | | |
|---|---|---|
| IN RE: ADOPTION OF: I.R.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.S., FATHER | : | No. 614 MDA 2019 |

Appeal from the Decree Entered March 20, 2019
in the Court of Common Pleas of York County
Orphans' Court at No(s): 2018-0193a

| | | |
|---|---|---|
| IN RE: ADOPTION OF: H.A.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.S., FATHER | : | No. 615 MDA 2019 |

Appeal from the Decree Entered March 21, 2019
in the Court of Common Pleas of York County
Orphans' Court at No(s): 2018-0194(a)

BEFORE:  DUBOW, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:          **FILED NOVEMBER 15, 2019**

A.S. ("Father") appeals from the Decrees entered on March 20, 2019,[1] granting the Petitions filed by the York County Office of Children, Youth and Families ("CYF" or the "Agency"), seeking to terminate Father's parental rights to his minor female children, A.L.S. (born in May 2012), and I.R.S. (born in July 2014), and his male child, H.A.S. (born in April 2016) (collectively, "the Children"), pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).[2]  We affirm.

In its Opinion pursuant to Pa.R.A.P. 1925(a), the trial court set forth the factual background and procedural history of this appeal, which we adopt herein.  **See** Trial Court Opinion, 5/13/19, at 1-9.

Relevantly, on July 26, 2017, CYF filed dependency Petitions as to the Children pursuant to the Juvenile Act, 42 Pa.C.S.A. § 6301, *et seq*.  On August 9, 2017, the trial court held an adjudicatory hearing, and determined that the Children were dependent under the definitions of "dependent child" set forth at 42 Pa.C.S.A. § 6302(1) and (3).  Father and the Children's maternal grandparents, C.W. and R.W. ("Maternal Grandparents"), were present at the

---

[1] Regarding the Decree involuntarily terminating Father's parental rights to H.A.S., we observe that the date stamp on the Decree indicates that the document was received by the clerk of courts on March 20, 2019.  However, the Decree was docketed on March 21, 2019.

[2] We note that, after a hearing on April 12, 2019, the trial court confirmed the consents to adoption filed by K.W., the Children's mother ("Mother").  **See** N.T., 3/20/19, at 5-8; and N.T., 4/12/19, at 4-11.  Mother has not filed a brief in this appeal, nor has she filed an appeal of her own.

adjudicatory hearing. Mother was not present at the adjudicatory hearing. The Children were residing with Maternal Grandparents in kinship placement, and remained in that placement. In the permanency review Order entered on July 3, 2018, the trial court ordered Father to maintain safe, stable, and appropriate housing, and to maintain a stable and lawful income to support the Children. Additionally, the trial court ordered Father to cooperate with Justice Works Youth Care to work towards accomplishing the goals of the family service plan. Mother, Father, and Maternal Grandparents retained medical and educational rights over the Children.

A series of permanency review hearings and Orders followed, with the Children remaining in kinship care with Maternal Grandparents. The Order entered after the October 2, 2018 permanency review and dispositional hearing changed the permanency goal for the Children from reunification to adoption. The Children remained in kinship placement with Maternal Grandparents.

On December 11, 2018, CYF filed Petitions seeking to involuntary terminate Father's parental rights to the Children.

At the time of the next permanency review hearing on December 27, 2018, both Father and Mother were incarcerated at the York County Prison. Mother was not present at the hearing. Father's incarceration was based on charges connected with an incident in November 2018, in which he was accused of threatening an individual with a gun, followed by a stand-off, and

then a police chase. Father was charged with fleeing police and possession of a firearm, and had a number of charges pending in both York County and Lancaster County at the time of the termination hearing.[3] In the permanency review Order entered on December 27, 2018, the trial court retained the goal of adoption, and ordered that legal and physical custody remain with CYF. The Children remained in kinship placement with Maternal Grandparents.

On March 6, 2019, the trial court held a permanency review and dispositional hearing, and entered an Order finding that Father had not complied with the permanency plan. The trial court retained the goal of adoption, and ordered that legal and physical custody remain with CYF. The Children remained in kinship placement with Maternal Grandparents.

On March 20, 2019, the trial court held an evidentiary hearing on the Petitions ("TPR hearing"). CYF presented the testimony of Father's York County Probation/Parole Officer; a drug and alcohol monitoring specialist at Families United Network; the program director at Catholic Charities Intensive Families Services, representing the family advocate who worked with the family; a reunification and permanency caseworker for CYF assigned to the family. N.T., 3/20/19, at 21, 29, 34, and 41. Father testified on his own

---

[3] The trial court admitted the criminal records relating to Father's incarceration from both York County and Lancaster County into evidence, and took judicial notice of their contents. **See** N.T., 3/20/19, at 16-18.

behalf. *Id.* at 83. The trial court examined Maternal Grandmother. *Id.* at 105. The trial court interviewed A.L.S., *in camera*, with only counsel present.[4]

At the close of the hearing, the trial court stated as follows:

THE COURT: All right. I am signing the final [D]ecree for the involuntary termination of the parental rights of Father. I won't go into a lot of detail as to why, but I do want to say two things on the record.

The first is I've had this case since it began in June of 2017. I have a file that's four to five inches thick. I have notes from every hearing[,] and my recollection of Father's life before [his] incarceration is substantially different from Father's recollection in many regards.

Secondly, I want to make it very clear that[,] when I changed the goal to adoption, it was October 2nd of 2018[,] and that was a month-and-a-half before [F]ather was incarcerated. I make much of this on the record to make it clear that adoption was the proper goal for these children before Father was

_____

[4] We observe that the trial court appointed Barbara Orsburn Stump, Esquire ("Attorney Stump"), to represent the Children's legal interests, and Katherine Louise Doucette, Esquire ("Attorney Doucette"), as the Children's guardian *ad litem* ("GAL"). *See In re Adoption of L.B.M.*, 161 A.3d 172 (Pa. 2017) (plurality) (requiring the appointment of separate legal counsel to represent the legal interest of a child involved in a contested involuntary termination proceeding). Attorney Doucette stated that I.R.S. wished to be adopted, as did A.L.S., and that H.S., who was only two years old, had not indicated a preference. N.T., 3/20/19, at 8; *see also In re T.S.*, 192 A.3d 1080, 1092 (Pa. 2018) (holding that the trial court did not err in allowing the children's GAL to act as their sole representative during the termination proceeding, because, at two and three years old, they were incapable of expressing a preferred outcome). Attorney Stump stated that the female children had indicated similarly, with I.R.S. stating that Maternal Grandparents were her preference for permanency, and that Attorney Stump did not use the word "adoption" in the discussion with I.R.S. N.T., 3/20/19, at 8-9. A.L.S., who was seven years old at the time of the hearing, testified that she wished to live permanently with Maternal Grandparents, and that she and her siblings were doing well and liked living with Maternal Grandparents. *Id.* at 12-15.

incarcerated[,] for a whole lot of reasons that are set forth in that Order and from that hearing.

I have taken judicial notice of the fact that Father's charges are four different set[s] of charges in two different counties. They include felonies almost beyond what I could easily count. It is clear to me that Father is probably going to be in jail for at least another 5 to 10 years. It is just incomprehensible that he would obtain a not guilty verdict on four different sets of charges. It looked to me that it is going to be four different trials.

I have no doubt that the bond between these children and their grandparents is very great. I of course did talk to [A.L.S.] just a few hours ago, and she did indicate that she wanted to be adopted by her [Maternal G]randparents. I find that the bond between Father and these children is somewhat strong but leaning [*sic*]. The bond with the [Maternal G]randparents is waxing or increasing. I find that there will be no harm in severing the bond, or substantial harm is [*sic*] severing the bond between Father and the [C]hildren. It's definitely without any doubt in this court's mind in the best interest of these [C]hildren for them to be adopted, and[,] accordingly[,] for Father's parental rights to be involuntarily terminated.

N.T., 3/20/19, at 111-12.

On March 20, 2019, the trial court entered its Decrees terminating Father's parental rights to the Children pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). On April 18, 2019, Father timely filed separate Notices of appeal, along with separate Concise Statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), with regard to each of the Children.[5]

Father now raises two issues for our review:

---

[5] This Court, *sua sponte*, consolidated the appeals for review.

> 1. Did the [trial c]ourt err as a matter of law and/or abuse its discretion in terminating Father's parental rights[,] when the Agency failed to meet its burden that termination of parental rights was warranted under 23 Pa.C.S.[A.] [§] 2511(a)(1), (8), and 2511(b)?
>
> 2. Did the [trial c]ourt abuse its discretion in granting the Agency's request to terminate Father's parental rights?

Father's Brief at 4 (issues numbered).[6]

We will address Father's claims together, as they are related. Father claims that there was insufficient evidence to terminate his parental rights to Children. *See id.* at 13-24. Father argues that the evidence established that he had complied with the goals identified in his Family Services Plan, and was employed. *Id.* at 17-18, 20. Father also contends that, despite the trial court's conclusion that he had failed to maintain stable housing, the Agency never visited his home to determine whether it was appropriate. *Id.* at 18, 23. According to Father, he complied with the court-ordered services and conditions and, although he was unable to complete a section 5329 evaluation, he cooperated with the assigned team. *Id.* at 19. Additionally, Father asserts that he and the Children share a strong bond. *Id.* at 20-21. Father further

---

[6] Although Father stated his issues somewhat differently in his Concise Statement, we find that he preserved the issues for our review. *See Krebs v. United Refining Co. of Pa.*, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both his concise statement of errors complained of on appeal and the statement of questions involved in his brief on appeal).

- 7 -

argues that the trial court improperly considered his pending criminal charges.

*Id.* at 23-24.

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.
>
> [U]nlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012) (internal citations omitted).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

Moreover, we have explained, "[t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***Id.*** (quoting ***In re J.L.C.***, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a), along with consideration of section 2511(b). ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). We will consider subsections 2511(a)(1) and (b), which provide as follows:

> **§ 2511. Grounds for involuntary termination**
>
> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
>> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>>
>> * * *
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

With respect to subsection 2511(a)(1), our Supreme Court has held as follows:

> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Adoption of Charles E.D.M.*, 708 A.2d 88, 92 (Pa. 1988).

Further, this Court has stated,

> the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B.,N.M.*, 856 A.2d 847, 854-55 (Pa. Super. 2004) (citations omitted).

Additionally, regarding incarceration and preservation of parental rights,

we have stated the following:

> [I]ncarceration of a parent does not, in itself, provide sufficient grounds for termination of parental rights; however, an incarcerated parent's responsibilities are not tolled during his incarceration. … [P]arental duty requires that the parent not yield to every problem, but must act affirmatively, with good faith interest and effort, to maintain the parent-child relationship to the best of his ability, even in difficult situations.

*In the Interest of C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (citations

omitted). "Parental rights are not preserved by waiting for a more suitable or

convenient time to perform one's parental duties while others provide the child with his or her physical and emotional needs." ***In re K.Z.S.***, 946 A.2d 753, 759 (Pa. Super. 2008) (citations omitted).

The focus in terminating parental rights under section 2511(a) is on the parent, but, pursuant to section 2511(b), it is on the child. ***In re Adoption of C.L.G.***, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*). In reviewing the evidence in support of termination under section 2511(b), our Supreme Court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.[A.] § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." ***In re K.M.***, 53 A.3d 781, 791 (Pa. Super. 2012). In ***In re E.M.***, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. ***In re K.M.***, 53 A.3d at 791.

***In re: T.S.M.***, 71 A.3d 251, 267 (Pa. 2013).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, section 2511(b) does not require a formal bonding evaluation." ***In re Z.P.***, 994 A.2d 1108, 1121 (Pa. Super. 2010) (internal citations omitted). Although it is often wise to have a bonding evaluation and make it part of the certified record, "[t]here are some instances … where direct

observation of the interaction between the parent and the child is not necessary and may even be detrimental to the child." *In re K.Z.S.*, 946 A.2d at 762.

Further,

concluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent. … Nor are we of the opinion that the biological connection between [the parent] and the children is sufficient in of itself, or when considered in connection with a child's feeling toward a parent, to establish a *de facto* beneficial bond exists. The psychological aspect of parenthood is more important in terms of the development of the child and [his or her] mental and emotional health than the coincidence of biological or natural parenthood.

*In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008) (internal citations and quotation marks omitted). Thus, the court may emphasize the safety needs of the child. *See In re K.Z.S.*, 946 A.2d at 763 (affirming involuntary termination of parental rights, despite existence of some bond, where placement with mother would be contrary to child's best interests). "[A] parent's basic constitutional right to the custody and rearing of his or her child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *In re B.,N.M.*, 856 A.2d at 856 (internal citations omitted).

In its Opinion, the trial court addressed Father's claim, and concluded that there was clear and convincing evidence to terminate Father's parental rights to the Children under subsections 2511(a)(1) and (b). **See** Trial Court Opinion, 5/13/19, at 14-20. After a careful review of the record, we conclude that the trial court's decision to terminate Father's parental rights is supported by competent, clear and convincing evidence in the record. **In re Adoption of S.P.**, 47 A.3d at 826-27. Thus, we find no abuse of discretion in the trial court's termination of Father's parental rights to the Children, and affirm on the basis of the trial court's Opinion. **See** Trial Court Opinion, 5/13/19, at 14-20.

Decrees affirmed.

Judge Nichols joins the memorandum.

Judge Dubow concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/15/2019

## IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA
## ORPHAN'S COURT DIVISION

IN RE:

A L S , : No. 2018-0192
        a minor :

I R S , : No. 2018-0193
        a minor :

H A S : No. 2018-0194
        a minor :
         :

## MEMORANDUM OPINION IN SUPPORT OF ORDER PURSUANT TO RULE 1925(a)(2)(ii) OF THE PENNSYLVANIA RULES OF APPELLATE PROCEDURE

AND NOW, this 13th day of May, 2019, the Court is in receipt of Appellant's

Notice of Appeal and 1925b Statement, as required by the Rules of Appellate Procedure

for a Children's Fast Track Appeal. Pa.R.A.P 1925(a)(2)(i). The Court hereby reaffirms

its Order Terminating Father's Parental Rights entered on March 20, 2019 following a

hearing on the same date, as the result of a Petition to Terminate Parental Rights filed by

the York County Office of Children, Youth and Families.

### FACTUAL AND PROCEDURAL HISTORY

On or about July 26, 2017, the York County Office of Children, Youth and

Families (hereinafter referred to as "CYF"), filed multiple Dependency Petitions with

respect to A L S , born May 17, 2012; I R S , born July 27, 2014;

and H A S born April 25, 2016 (hereinafter referred to collectively as

the "Children" or individually referred to by their first name only). Appellant, A

S is the biological father of the Children (hereinafter referred to as "Father"). K

W is the biological mother of the Children (hereinafter referred to as "Mother").

1

C     W     and R     W     are the biological maternal grandparents of the Children (hereinafter referred to collectively as "Maternal Grandparents"). In its Dependency Petition for each child, CYF sets forth the following facts:

"1.     On or about June 21, 2017, YCOCYF received a referral regarding the minor [children], due to allegations of drug usage by Mother.

2.     The minor children and Mother were residing with the maternal grandparents, C     W     and R     W

3.     Allegations received were that Mother is using heroin and crack/cocaine and will leave the maternal grandparents' residence for extended periods of time.

4.     On June 20, 2017, at approximately 2:00 p.m., the Mother returned to the maternal grandparents' residence after being away for several days.

5.     Mother left the residence at approximately 3:10 p.m. and her whereabouts are unknown.

6.     The maternal grandparents contacted Northern Regional Police Department and reported Mother as a missing person.

7.     On June 23, 2017, Father appeared at the maternal grandparents' residence and took the children.

8.     On July 5, 2017, Father appeared at the office of YCOCYF and stated that he and the children can no longer reside at his brother's residence; Father and the children had been staying in a hotel for three days and could no longer continue to pay for the hotel.

9.     Father agreed to allow the maternal grandparents to care for the children.

10.     The maternal grandparents agreed to care for the children, but requested financial assistance.

2

11. The maternal grandparents have been approved as emergency caregivers for the children."

*Dependency Petition,* filed July 26, 2017.

Following an Adjudicatory Hearing on August 9, 2017, the Children were determined to be dependent pursuant to the Pennsylvania Juvenile Act at 42 Pa.C.S.§6302, subsections (1) and (3), specifically that "[t]he child is without proper care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals;" and "[t]he child has been abandoned by his parents, guardian, or other custodian." *42 Pa.C.S. §6302(1) and (3).* Father and Maternal Grandparents were present at the hearing, but Mother was not present. Further, it was ordered by the Court that Father was to maintain safe, stable and appropriate housing for the Children and was to maintain stable, lawful income to support the Children; and that Father was to cooperate with Justice Works Youth Care to work towards the goal of the family service plan. Mother, Father, and the Maternal Grandparents retained medical and educational rights to the Children.

On November 6, 2017, a Status Review Hearing was held and a subsequent Order was entered, wherein the Court found that there had been no progress made by Father. Father did not have stable housing and was unable to care for the Children, Father provided no proof of income to CYF, and Father did not respond to CYF's offer to have a team assigned to assist him. The Court ordered that legal and physical custody of the Children would remain with CYF and the Children would stay in Kinship Placement with the Maternal Grandparents. It is noted that Father indicated at the hearing that he

3

would like a team assigned and that Maternal Grandparents were not cooperating with him to visit the Children. Additionally, the oldest child, A.L.S. needed dental surgery, which both parents consented to allow. Otherwise, all three (3) Children were doing well and up-to-date on all their medical needs in the care of the Maternal Grandparents.

On January 16, 2018, a combined Permanency Review Hearing and Dispositional Hearing was held and a subsequent Order was entered, wherein the Court found that there had been minimal compliance with the permanency plan made by Father, however, in the Report to the Court for Permanency Review Hearing dated December 31, 2017 prepared by CYF, it stated that Father had made "Full Progress" with respect to compliance with the permanency plan. It stated in the said Report that Father had not provided CYF proof of income and stable housing, but to the contrary, the Permanency Review Order dated January 16, 2018, indicated that Father did provide proof of income and stable housing. It was consistently stated in both the Report and the Permanency Review Order that Father had supervised visits with the Children and the visits were going well. Additionally, the Permanency Review Order stated that the current permanent placement goal was to return to parent to be achieved within 6 to 12 months, with a concurrent placement goal of adoption, and that both were considered appropriate and feasible. Finally, the Court ordered that legal and physical custody of the Children would remain with CYF and the Children would stay in Kinship Placement with the Maternal Grandparents. Father was directed to maintain safe, stable and appropriate housing for the Children, and maintain stable, lawful income to support the Children; undergo

4

random testing for drug and alcohol use; and cooperate with an in-home team to work toward the goal of the family service plan. The Children continued to do well in the care of the Maternal Grandparents.

On April 12, 2018, a Status Review Hearing was held and a subsequent Order was entered, wherein the Court found that there had been slight progress by Father. In relevant part, the said Order stated as follows:

> "He has obtained stable housing and employment but has not provided a copy of his lease for his residence in Mt. Joy. He has provided pay stubs showing 20-25 hours per week. The caseworker has not seen his home. A referral has been made to Pressley Ridge for an in-home team and supervision of visits. PR reports a waiting list. He sees [the children] in supervised visits at the Lafayette House twice weekly. The caseworker shall determine whether the Father sees himself as a placement resource or not. If he does, the home will need to be inspected. The Father needs to complete a threat of harm evaluation if he views himself as a resource and if he wants to begin unsupervised visitation. He has not responded to FUN requests for drug testing. Two attempts were ignored. He has not completed a drug and alcohol evaluation."

*Order*, dated April 12, 2018. *Recommendation – Status Review*, dated April 12, 2018. The current goal remained to return the Children to parent. The Court ordered that legal and physical custody of the Children would remain with CYF and the Children would stay in Kinship Placement with the Maternal Grandparents. The Children continued to do well in the care of the Maternal Grandparents.

On July 3, 2018, a combined Permanency Review Hearing and Dispositional Hearing was held and a subsequent Order was entered, wherein the Court found that there had been minimal compliance with the permanency plan made by Father. Specifically,

5

the said Permanency Review Order stated "Father continues to visit with the children two times per week. He has not cooperated with drug testing. Father has not been cooperative in finding documentation of appropriate housing, employment and has not provided a copy of the threat of harm evaluation which he states has been completed." *Permanency Review Order*, dated July 3, 2018. Additionally, the Permanency Review Order stated that the current permanent placement goal was to return to parent to be achieved within 6 to 12 months, with a concurrent placement goal of adoption, and that both were considered appropriate and feasible. Finally, the Court ordered that legal and physical custody of the Children would remain with CYF and the Children would stay in Kinship Placement with the Maternal Grandparents. Father was directed to maintain safe, stable and appropriate housing for the Children, and maintain stable, lawful income to support the Children; undergo random testing for drug and alcohol use; cooperate with an in-home team to work toward the goal of the family service plan, and obtain a threat of harm evaluation. The Children continued to do well in the care of the Maternal Grandparents.

On October 2, 2018, a combined Permanency Review Hearing and Dispositional Hearing was held and a subsequent Order was entered, wherein the Court found that there had been minimal compliance with the permanency plan made by Father. Specifically, the said Permanency Review Order stated "Father continues to visit with the children two times per week. Overall, visits are reportedly going well, but Father struggles with following through with consequences for the children. Father has failed to provide proof

6

of income or his current address. Father stated that he is working on completing his drug and alcohol evaluation at White Deer Run and has scheduled his Threat of Harm Evaluation. He is struggling financially to get the evaluation scheduled. Catholic Charities began with Father on September 13, 2018. Father was tested by FUN before court today and was negative for substances." *Permanency Review Order*, dated October 2, 2018. The Permanency Review Order changed the permanent placement goal from return to parent to adoption, as the goal of returning to a parent was no longer considered appropriate and feasible. Finally, the Court ordered that legal and physical custody of the Children would remain with CYF and the Children would stay in Kinship Placement with the Maternal Grandparents. It is noted that by the date of this hearing, the Children had been in placement for 15 months.

On December 27, 2018, a Status Review Hearing was held and a subsequent Order was entered, wherein the Court found that there had been minimal progress by Father, and noted that both parents were incarcerated at the time of the hearing. In relevant part, the said Order stated as follows:

> "Father is incarcerated at YCP and was not transported as arranged. Counsel elected to proceed without him. Father has a January 9, 2019 magistrate hearing on a gun charge and perhaps a second one on January 14, 2019. He was incarcerated following charges connected to an incident in Mt. Joy in which [he] is accused of threatening an individual with a gun, followed by a stand-off, and a police chase. Prior to incarceration Father visited the [Children] twice weekly, as supervised by Catholic Charities. He struggled with parenting. Father has failed to provide proof of income. Father stated to the caseworker that he has completed his D&A evaluation with no recommendations according to Father (the Agency has been unable to confirm), and he has completed an

7

anger management evaluation with no recommendations. He has not completed a Threat of Harm Evaluation because the Agency and Spirit Trust were not able to agree on funding. Father was working with Catholic Charities until his incarceration. Father was not cooperative with drug testing by FUN and there were two attempts and one negative prior to incarceration. Father had requested an interstate compact for the paternal grandfather in South Carolina but none has been done and the caseworker says he will begin one. Father has not requested visits since incarceration. (11-27-18)."

*Order*, dated December 27, 2018. *Recommendation – Status Review*, dated December 27, 2018.

The current goal remained adoption. The Court ordered that legal and physical custody

of the Children would remain with CYF and the Children would stay in Kinship

Placement with the Maternal Grandparents.

On March 6, 2019, a combined Permanency Review Hearing and Dispositional

Hearing was held and a subsequent Order was entered, wherein the Court found that there

had been no compliance with the permanency plan made by Father. Specifically, the said

Permanency Review Order stated as follows:

> "Father has been incarcerated at York County Prison since November 27, 2018. The Agency has reached out to his Adult Probationary Officer, Kevin Titzel, but has not heard from him to date. Father takes parenting classes, GED and other classes while at YCP. He is in a class which records his reading of a book to his children and a recording of his thoughts for delivery to the children. He currently has no visits or telephone contact with the children at the prison by jail policy due to his pending charges. He expects a criminal hearing in April, 2019 on pending criminal charges, fleeing and possession of a firearm. The agency submitted an ICPC request to consider the paternal grandfather as a placement resource at the rest of the Father."

*Permanency Review Order*, dated March 6, 2019.

8

The Court ordered that legal and physical custody of the Children would remain with CYF and the Children would stay in Kinship Placement with the Maternal Grandparents. It is noted that by the date of this hearing, the Children had been in placement for 18 months, and all were doing well with the Maternal Grandparents.

A Termination of Parental Rights Hearing (hereinafter referred to as the "TPR Hearing"), was held on March 20, 2019. CYF filed for termination of Father's parental rights under 23 Pa.C.S.A. §2511(a)(1), (2), (5) and (8), on December 11, 2018. At that time, the undersigned interviewed the oldest child, A.L.S. in-camera with only counsel present. During the interview, A.L.S. expressed a desire to live permanently with Maternal Grandparents. She also stated that she, and her brother and sister, were doing well and liked living with Maternal Grandparents. The Court heard testimony from Father's probation/parole officer, Families United Network, Catholic Charities, the caseworker assigned to the case by CYF, Father, and Maternal Grandmother. The Court ultimately decided that it was in the best interest of all the Children that Father's parental rights be terminated.

## ISSUES ON APPEAL

Father raises the following issues in his 1925(b) Statement, each will be discussed in turn below.

"3.     It is alleged that the Lower Court erred as follows:

a.     During the hearing, A ˙ S testified as to programs attended while incarcerated in the York County Prison and exhibits as to these programs were submitted to the Court.

9

b.  The Court stated that A. S attended these programs after the filing of the Children, Youth and Families' Petition to terminate parental rights.

c.  23 Pa.C.S.A. Section 2511(b) states in part that 'with respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.'

d.  Children, Youth and Families filed for termination of parental rights on December 11, 2018 under 23 Pa.C.S.A. Section 2511(a)(1), (2), (5) and (8).

e.  As CYF filed under subsections other than (a)(1), (6) and (8), the Lower Court erred in refusing to consider the programs attended by A S

f.  When issuing its decision, the Lower Court commented on the criminal charges that A · S is facing and stated that it is expected that the Father will spend a number of years in jail.

g.  As the criminal charges filed against A S are still pending, it was error for the Court to speculate on what time the Father will spend in jail.

h.  The Lower Court erred as a matter of law in terminating the parental rights of Father under 23 Pa.C.S.A. Section 2511 (a)(1) as CYF failed to prove by sufficient evidence that by conduct continuing for a period of at least six months immediately preceding the filing of the Petition Father had evidenced a settled purpose of relinquishing paternal claim or has refused or failed to perform parental duties in that testimony was presented that A S had complied with the Family Service Plans, attended visits with his children, worked with an in-home team, had requested Agency help with obtaining a Threat of Harm evaluation, obtained employment, sent mail and/or cards t the children, attended at least one medical appointment and had a healthy bond with the child.

10

i.   The Lower Court erred as a matter of law in terminating the parental rights of Father under 23 Pa.C.S.A. Section 2511 (a)(2) for the reasons set forth in paragraph (h) of this Statement.

j.   The Lower Court erred as a matter of law in terminating the parental rights of Father under 23 Pa.C.S.A. Section 2511 (a)(5) for the reasons set forth in paragraph (h) of this Statement. Additionally, there was testimony that there was a healthy bond between the Father and the child and insufficient evidence was presented to establish that termination of parental rights would best serve the needs and welfare of the child.

k.   The Lower Court erred as a matter of law in terminating the parental rights of Father under 23 Pa.C.S.A. Section 2511 (a)(8) for the reasons set forth in paragraph (h) of this Statement. Additionally, there was insufficient evidence presented that termination of parental rights would best serve the needs and welfare of the child.

l.   The Lower Court erred as a matter of law in terminating the parental rights of Father under 23 Pa.C.S.A. Section 2511(b) as this subsection states that the primary consideration shall be given to the developmental, physical and emotional needs and welfare of the child and the decision to terminate the parental rights of the Father is contrary to the best needs and welfare of the child.

4. For the reasons set forth in paragraph 3(a) through (l) inclusive, it is averred that the decision entered by the Court terminating Father's parental rights was not supported by sufficient evidence.

5. For the reasons set forth in paragraph 3(a) through (l) inclusive, it is averred that the Lower Court abused its discretion in terminating parental rights."

*Appellant A        S        1925(b) Statement, filed April 18, 2019.*

## DISCUSSION

The Pennsylvania Superior Court has previously held that in reviewing an appeal

from a decree terminating parental rights, the reviewing court is limited to "determining

whether the decision of the trial court is supported by competent evidence. Absent an

11

abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand." *In the Matter of B.L.W.*, 843 A.2d 380 (Pa. Super. 2004). When a trial court has involuntarily terminated parental rights, the reviewing court "must accord the hearing judge's decision the same deference that [it] would give to a jury verdict." *Id.* The reviewing court "must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence." *Id.*

An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the results of partiality, prejudice, bias or ill-will. *Baysmore v. Brownstein*, 771 A.2d 54, 57 (Pa. Super. 2001) (internal citations omitted).

The termination of parental rights is based on 23 Pa.C.S.A. §2511, generally. Specific to this case, the relevant parts of the statute is as follows:

> (a) General rule – The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control, subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

12

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

(b) Other considerations – The court terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a) (1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

*23 Pa.C.S.A. §2511(a) and (b).*

The Court did not err in refusing to consider the programs attended by Father post filing for termination of parental rights, because the Court only needs the requirements of one of the subsections under 23 Pa.C.S.A. §2511(a) to be satisfied to terminate parental rights, regardless of how many subsections of the statute are cited as grounds for termination.

13

The Superior Court previously held in *In re B.L.W.,* that "[s]atisfaction of the requirements in only *one* subsection of Section 2511(a), along with consideration of the provisions in Section 2511(b), is sufficient for termination." *In re B.L.W.,* 843 A.2d 380, 384 (Pa. Super. 2004) *(en banc).*

In this case, there is sufficient evidence that grounds for termination exist under subsections (a)(1) and (8) of the statute. Father has failed to maintain stable employment, because he has only provided proof of part-time employment with varying hours and no proof of his alleged full-time employment. Father has failed to maintain stable housing, because for the majority of the time since the Children were placed in care and as of the date of Father's incarceration prior to the TPR hearing, Father resided at the Donna Lane address which is the same address that Father reported as his residence when the Children were placed in care due to Father's inability to have the Children at that residence. Father may have resided at the same residence for a substantial amount of time, but that is of little importance if he cannot have the Children living there with him. Father has failed to attend to the Children's medical and educational needs, because despite having shared legal custody of the Children with CYF and the Maternal Grandparents through the entire dependency process, Father did not attend any school events or take an active role in the Children's education; and Father only attended at most 2 medical appointments for the Children since they were adjudicated. Additionally, the requirements of subsection (a)(8) of the statute are also satisfied, because the Children were removed from the care of Father by the Court, at the time of the filing for

14

termination of parental rights 12 months or more had elapsed since the Children were placed into care, and the conditions which led to the placement of the Children, unstable employment and unstable housing, continue to exist and termination of parental rights would serve the needs and welfare of the Children.

In conjunction with §2511(b), having found sufficient evidence to terminate Father's parental rights under §2511(a)(1) and (8), the Court will not consider any efforts by Father to remedy the conditions which led to the notice of the filing of the petition to terminate parental rights. By way of further response, it is noted that Father completed programs for parenting skills, therapy, and GED class – none of these particular programs alleviate the conditions of unstable employment and unstable housing which led to the termination petition being filed. In fact, on the date of the TPR hearing, Father was incarcerated at the York County Prison and could not be farther from completing the goals of stable housing and stable employment. This Court notes that subsection (b) states that environmental factors such as inadequate housing and income cannot be the sole grounds for terminating parental rights, if the Court finds these factors to be "beyond the control of the parent." *23 Pa.C.S.A. §2511(b)*. This is not the case with respect to Father. There was no evidence presented to the Court that Father was unable to maintain adequate employment and adequate employment for the Children due to circumstances beyond his control.

15

Therefore, the Court did not err in refusing to consider the programs attended by Father post filing for termination of parental rights, because the Court found sufficient evidence to terminate Father's parental rights under 23 Pa.C.S.A. §2511(a)(1) and (8).

The Court did not err in speculating as to the amount of time that Father could potentially spend in prison for his pending criminal charges, because the weight of Father's pending criminal charges was very slight in the determination of whether or not to terminate Father's parental rights.

The permanency placement plan goal was changed from reunification to adoption at the October 2, 2018 combined Permanency Review Hearing and Dispositional Hearing. The change of goal to adoption was due Father's failure to maintain safe, stable and appropriate housing for the Children; maintain stable, lawful income to support the Children; undergo random testing for drug and alcohol use; cooperate with an in-home team to work toward the goal of the family service plan, and obtain a threat of harm evaluation. It is noted that Father did begin working with an in-home team on, Catholic Charities on October 5, 2018, but this had been a requirement Father was to complete since the date the Children were adjudicated, over a year ago; and Father's efforts to work with an in-home team only came after the permanency plan goal was changed to adoption. It is also noted that there was some testimony of Father's attempts to obtain a 5329 evaluation, but again, this effort proved to be too little too late on Father's part. Additionally, the permanency placement goal was changed to adoption over a month prior to Father's incarceration date of November 27, 2018. In speculating as to the

16

amount of time Father could possibly serve for the pending charges, the Court was not relying on the possibility of "what-ifs" to terminate Father's parental rights, but rather was opining as to the gravity of the charges against Father. Father asks the Court to just ignore the pending charges against him, and while the Court may not use those pending charges as grounds to terminate Father's parental rights, the Court cannot ignore the fact that Father was on probation/parole for a previous conviction at the time of the November 27, 2018 incarceration; and that the charges pending against Father are voluminous and egregious to the most basic morals of a civilized society. While this Court cannot put weight on Father's pending charges, Father's criminal history does show a pattern of behavior that this Court finds concerning, to say the least.

Therefore, the Court did not err in speculating as to the amount of time that Father could potentially spend in prison for his pending criminal charges, because Father's pending criminal charges were not a determining factor in the decision to terminate Father's parental rights.

The Court did not err as a matter of law in terminating the parental rights of Father under 23 Pa.C.S.A. §2511(a)(1), because sufficient evidence was presented at the TPR Hearing demonstrating that for a period of at least six (6) months immediately preceding the filing of the petition to terminate Father's parental rights, Father had refused or failed to perform parental duties for the Children. Father refused or failed to perform parental duties for the Children, because as previously detailed herein, Father failed to maintain stable employment, maintain stable housing, and attend to the

17

Children's medical and educational needs. Therefore, the Court did not err as a matter of law in law terminating the parental rights of Father pursuant to 23 Pa.C.S.A. §2511(a)(1).

Father asserts in his 1925(b) Statement that the Court erred as a matter of law in terminating the parental rights of Father under 23 Pa.C.S.A. §2511 (a)(2), (5) and (8). As previously stated herein, the Court need not find sufficient evidence to terminate parental rights under all the subsections of 2511(a) cited as grounds for termination by CYF, but rather, the Court need only find sufficient evidence under *one* (1) subsection of the statute to terminate parental rights.

For the reasons set forth herein, the Court has found sufficient evidence to terminate Father's parental rights under subsections (a)(1) and (8) of the statute. By way of further response, evidence was presented on the record at the TPR Hearing that termination of Father's parental rights would best serve the needs and welfare of the Children, because Maternal Grandparents provided a stable, safe, loving environment for the Children to grow up in, which Father could not provide. Father made no efforts to correct the conditions which led to the Children being placed in Maternal Grandparent's care in the first place, specifically, Father did not have adequate housing and Father did not have the adequate financial resources to provide for the Children. Additionally, the Children were in the care of Maternal Grandparents prior to being adjudicated, and had resided with Maternal Grandparents off and on for most of their lives. In fact, evidence was presented at the TPR Hearing that the youngest child HAS. had been in Maternal Grandparent's care for his whole life, except for a few weeks, due at least in part, to

18

Father's prior incarceration for which he is now on probation/parole. The permanent placement of the Children in the care of the Maternal Grandparents in this case is simply maintaining the status quo and allowing the Children the chance to have a safe, stable, loving home environment.

Therefore, the Court did not err in terminating Father's rights under 23 Pa.C.S.A. §2511 (a)(2) and (5) because the Court found there to be sufficient evidence to terminate the parental rights of Father under §2511 (a)(1) and (8) and consideration under subsections (a)(2) and (5) of the statute were unnecessary.

The Court did not err as a matter of law in terminating the parental rights of Father under 23 Pa.C.S.A. §2511(b), because of the reasons previously stated herein, the decision to terminate the parental rights of the Father was not contrary to the best needs and welfare of the Children. Additionally, evidence was presented that the Children were consistently doing well in the care of Maternal Grandparents since adjudication. Maternal Grandparents expressed a desire to adopt the Children and the oldest child, expressed a desire to be adopted by Maternal Grandparents. The Children had resided with Maternal Grandparents prior to adjudication, and off and on over the years of the Children's lives. As the Pennsylvania Superior Court stated in *In the Interest of Lilley*,

> "[t]he child's right is to appropriate custodial care and we may not deny him a wholesome and binding family relationship under the rubric of a superior constitutional right to live with or remain legally attached to his/her biological parent. These determinations flow from a fundamental need to protect the child in the critical most defenseless years of his development and for the good of society and the best interest of the child. The shelter of a functional family has a higher value than the esoteric right to have contact with the person who claims biological parentage but who fails to fulfill the duties of a parent."

19

*In the Interest of Lilley,* 719 A.2d 327 (Pa.Super.1998).

Thus, the Court did not err as a matter of law in terminating the parental rights of Father under 23 Pa.C.S.A. §2511(b).

## CONCLUSION

The decision entered by the Court terminating Father's parental rights was supposed by sufficient evidence, as shown herein as well as the record of this matter in its entirety.

The Court did not abuse its discretion in terminating Father's parental rights, because the decision to terminate Father's parental rights was based on competent evidence andwas not manifestly unreasonable, or the results of partiality, prejudice, bias or ill-will.

For the foregoing reasons, the Court hereby reaffirms its Order Terminating Father's Parental Rights entered on March 20, 2019.

BY THE COURT,

N. CHRISTOPHER MENGES, JUDGE

20